IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

MISTY SIMMS, next friend of
Caelan Jantuah, an infant, and
MISTY SIMMS, individually

                Plaintiffs,

v.                              CIVIL ACTION NO. 3:11-0932

THE UNITED STATES OF AMERICA,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiffs' Motion to Amend (ECF No. 37). For the reasons explained below, this Motion is **DENIED**.

### I.    Statement of Facts

On November 21, 2011, Plaintiff Misty Simms filed the pending Complaint individually and as next friend for her infant son, Caelan Jantuah, seeking damages in relation to Ms. Simms' prenatal care while pregnant with Caelan and in relation to disabilities and abnormalities experienced by Calean after birth. Compl., ECF No. 1. Valley Health Systems, Inc. ("VHS")—including employee Richard Booth, M.D.—provided prenatal care to Ms. Simms starting around December 2007. On February 27, 2008, Ms. Simms received an ultrasound at VHS. According to Plaintiffs, this ultrasound revealed certain fetal abnormalities, yet Ms. Simms was not told about these findings. Dr. Booth and VHS allegedly "documented a referral to another physician, Dr. Chaffin, as a result of the ultrasound," Compl. ¶ 21, but Ms. Simms does not recall being informed about the referral and did not visit Dr. Chaffin. She was not told about the referral

1

during any of four subsequent visits to VHS. Ms. Simms received another ultrasound at VHS on May 14, 2008, at which time she was told about the presence of fetal abnormalities. Ms. Simms was sent for an additional ultrasound with Dr. Singh that same day; Dr. Singh confirmed the abnormalities. Dr. Singh's office then questioned Ms. Simms about the earlier referral to Dr. Chaffin, about which Ms. Simms had been unaware. Ms. Simms underwent additional testing and examination over the next few weeks. She eventually received an ultrasound from Dr. Chaffin on June 13, 2008; Dr. Chaffin decided to induce labor. Caelan was born on June 18, 2008, with significant disabilities.

In the Complaint, Plaintiffs seek damages for "Negligence- Medical Malpractice/ Wrongful Birth" (Count I) and "Negligence- Medical Malpractice via Agency" (Count II). She originally sought damages from the United States (because VHS is a federally-funded facility), Dr. Booth, VHS, and the U.S. Department of Health and Human Services. However, the parties subsequently stipulated to the dismissal of all Defendants except the United States based on the Federal Tort Claims Act ("FTCA") and the Public Health Service Act.

Plaintiffs now seek to amend the Complaint. Mot. Amend, ECF No. 37. The proposed Amended Complaint, filed as an exhibit to the Motion to Amend, is a significant departure from the existing Complaint. For example, the proposed Amended Complaint adds Ms. Simms' other infant son, Elijah Simms, as a plaintiff, on whose behalf Ms. Simms will act as next friend. While Counts I and II remain the same, five additional counts are added: Count III- Negligence; Count IV- Battery- Informed Consent; Count V- Pure Negligence- Informed Consent; Count VI- Negligent Infliction of Emotional Distress- Zone of Danger- Derivative Victim; Count VII- Negligent Infliction of Emotional Distress- Direct Victims. It also adds legal argument concerning jurisdiction, specifically regarding waiver of immunity for intentional torts, and seeks

2

additional damages.[1] Defendant opposes amendment. The Motion to Amend is now ripe for resolution.

## II. Legal Standard for Motion to Amend

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, after the time to amend as a matter of course has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Rule 16(b)(4) states that a scheduling order "may be modified only for good cause and with the judge's consent." As this Court explained in *Stewart v. Coyne Textile Services*, "a motion to amend . . . filed after the deadline established in the scheduling order, must satisfy the tests of both Rule 16(b) and Rule 15(a)" in order to be granted. 212 F.R.D. 494, 496 (S.D. W. Va. 2003).

As the Supreme Court has explained in discussing Rule 15(a), "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). In contrast, Rule 16(b)'s "good cause" standard focuses on the diligence of the moving party. *Stewart*, 212 F.R.D. at 496-97 (citing *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D. W. Va. 1995)). Rule 16(b) provides a higher hurdle for movants, and the Fourth Circuit affirms that this higher standard applies when the deadline to amend has expired. *Branch Banking & Trust Co. v. First Am. Title Ins. Co.*, No. 5:11-CV-00473, 2013 WL 85342, at *2 (S.D. W. Va. Jan. 7, 2013) (citing *Nourison Rug Corp. v. Parvizian,* 535 F.3d 295, 298 (4th Cir.

---

[1] The Motion to Amend does not note all of the proposed amendments; in fact, only a few are explained. Defendant argues that the Court should deny any amendments not specifically referenced in the Motion to Amend, but offers no legal authority for this proposition. Accordingly, the Court will not deny any amendments on that basis alone.

2008), among other cases). Again, "'Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party.'" *Id.* at *2 (quoting *Montgomery v. Anne Arundel Cnty.,* 182 Fed. App'x 156, 162 (4th Cir. 2006)).

Plaintiffs argue that Rule 16(b) does not apply here because they are not moving for a change in the scheduling order and amendment itself will not disrupt the scheduling order in place. The Court rejects this argument. Although the existing scheduling order does not contain a deadline for amending the pleadings, *see* ECF No. 35, this is because the current scheduling order was entered over a year after the deadline for amendment—April 23, 2012—passed, as set in the first scheduling order, ECF No. 12. Given that the deadline for the amendment of pleadings has long since expired, there is no need for the newer scheduling order to impose a deadline for amendment. Although Plaintiffs do not formally move for amendment of the scheduling order, allowing amendment would, in essence, alter the amendment deadline set earlier. Therefore, both Rule 15(a)(2)'s standard *and* Rule 16(b)'s "good cause" standard apply to the instant case.

### III.    Diligence in Moving for Amendment

This is the first amendment sought by Plaintiffs. The deadline for amendment expired on April 23, 2012. Plaintiffs moved for the instant amendment on September 17, 2013, nearly 17 months after the deadline for amendment passed. The Court notes that there have been delays in this case outside of the control of the parties. For example, Plaintiffs' counsel experienced significant health issues starting in June 2012. The case was accordingly stayed starting on

August 22, 2012, until the beginning of May 2013.[2] If the Court accordingly ignores the nearly one-year period during which the case was stayed due to counsel's illness, as it would be fair to do, then this Motion to Amend in essence comes approximately five months after the deadline expired.

Plaintiffs attempt to explain part of the delay by pointing to the Supreme Court's March 4, 2013, decision in *Levin v. United States*, 133 S. Ct. 1224 (2013). In *Levin*, the plaintiff sought to bring a battery claim against the United States in relation to the actions of military medical personnel. The FTCA contains an exception for intentional torts, 28 U.S.C. § 2680(h), meaning that intentional tort claims could not be brought under the FTCA. The Supreme Court was asked to decide if the Gonzalez Act, 10 U.S.C. § 1089, abrogated that exception. The Gonzalez Act outlines procedures for medical malpractice suits against the military and provides in pertinent part that "[f]or purposes of this section, the provisions of [the FTCA's intentional tort exception] shall not apply to any cause of action arising out of a negligent or wrongful act or omission in the performance of medical, dental, or related health care functions (including clinical studies and investigations)." 10 U.S.C. § 1089(e). The Supreme Court held that the plaintiff was permitted to bring an intentional tort claim against the United States because that provision of the Gonzalez Act abrogated the FTCA's intentional tort exception.

Plaintiffs argue that a similar provision of the Public Health Service Act should be interpreted to waive the FTCA's intentional tort exception: "For purposes of this section, the [FTCA's intentional tort exception] shall not apply to assault or battery arising out of negligence in the performance of medical, surgical, dental, or related functions, including the conduct of

---

[2] This case was also stayed for a period of time due to the government shutdown. The shutdown occurred after the Motion to Amend was filed and therefore does not affect the Court's analysis of Plaintiffs' timeliness in seeking amendment.

5

clinical studies or investigations." 42 U.S.C. § 233(e). Plaintiffs argue that they did not believe they could pursue a battery claim until the *Levin* decision was issued, and they therefore offer *Levin* as a justification for the late timing of the Motion to Amend.

There are several problems with this line of reasoning. First, to the extent that Plaintiffs rely on *Levin* to justify the delay in seeking amendment, the Court notes that *Levin* does not provide a "new" statement of law. Its holding is in accord with existing law and was not necessarily unexpected. Second, the Public Health Service Act provision above only deals with assault and battery. Therefore, even to the extent that *Levin* could excuse a delay in amending the Complaint to include a battery claim, *Levin*'s timing does not excuse a delay in seeking to add the *other* proposed amendments. In other words, none of the other proposed amendments relate to this "newly-discovered" theory. Plaintiffs argue that "[t]he uncertainty of Caelen's [sic] prognosis complicates determination of legally cognizable causes of action" and that "amendment is proper because [certain] circumstances gave rise to additional harm, losses, and damages." Reply 4-5, ECF No. 50. All of these allegedly-new circumstances, however, were already contemplated in the original Complaint or could have been foreseen when the Complaint was filed. For example, the Complaint already covers lost earnings. Also, Elijah is older than Caelan, and therefore there is no reason why the possibility of a claim for Elijah's loss of consortium was not apparent when the Complaint was first filed. Although Caelan's exact prognosis and plan of treatment is in flux, those changes in circumstances do not account for why the newly-asserted causes of action were not placed in the original Complaint. For example, claims involving negligent infliction of emotional distress and improper medical records were just as apparent when the Complaint was first filed. Plaintiffs offer no compelling explanation for why the proposed amendments were not included in the existing Complaint or, at the very

6

least, sought to be included within the deadline set by the first scheduling order or much sooner after the deadline had passed.

Third, *Levin* was decided in March 2013, while Plaintiffs' case was stayed, and therefore the Court will assume out of fairness that Plaintiffs' counsel could not have discovered *Levin* until Plaintiffs' case was returned to the active docket in May 2013. Plaintiffs' counsel, however, offers no explanation as to why they did not seek amendment based on *Levin* until September 2013, approximately four months after the case resumed.

For these reasons, the Court finds that Plaintiffs have not shown good cause for allowing amendment. In making this determination, the Court is mindful that Plaintiffs may still proceed with the original Complaint, and therefore justice does not require amendment. Although there is still significant time for discovery, Rule 16 requires the Court to focus on Plaintiffs' diligence in seeking amendment, and diligence is lacking in this situation.

### IV.    Conclusion

For the reasons explained above, Plaintiffs' Motion to Amend (ECF No. 37) is **DENIED**. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:    December 11, 2013

ROBERT C. CHAMBERS, CHIEF JUDGE