IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

MISTY SIMMS, next friend of
Caelan Jantuah, an infant, and
MISTY SIMMS, individually

                Plaintiffs,

v.                                    CIVIL ACTION NO.   3:11-0932

THE UNITED STATES OF AMERICA,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are the following motions: Plaintiffs' Motion *in Limine* No. 1 (ECF No. 119), Plaintiffs' Motion *in Limine* No. 2 (ECF No. 120), Plaintiffs' Motion *in Limine* No. 4 (ECF No. 121), Plaintiffs' Motion *in Limine* No. 5 (ECF NO. 122), Plaintiffs' Motion *in Limine* No. 6 (ECF No. 123), the Government's Motion for Partial Summary Judgment (ECF No. 124), Plaintiffs' Motion for Partial Summary Judgment on the Issue of Set Off of Damages (ECF No.127), and Plaintiffs' Motion for Partial Summary Judgment on Liability (ECF No. 129).

**I.**        **Statement of Facts**

Misty Simms obtained prenatal care from Richard Booth, M.D., and other employees of Valley Health Systems, Inc. ("Valley Health") while she was pregnant with Caelan Jantuah. *See* ECF No. 129, Ex. 1. On February 25, 2008, Karen Bonham performed an ultrasound test on Ms. Simms. ECF No. 129, Ex. 1. The ultrasound revealed certain fetal abnormalities. ECF No. 129, Ex. 1. Dr. Booth directed Ms. Bonham to refer Ms. Simms to the Perinatal Center at Cabell Huntington Hospital. ECF No. 129, Ex. 3. Dr. Booth documented the referral but did not inform

Ms. Simms of the referral. ECF No. 129, Ex. 1, Ex. 3. According to Ms. Bonham, she called the Perinatal Center and was told that they could not schedule an appointment until they had spoken to Dr. Chaffin, and that they would call Ms. Simms once an appointment had been made. ECF No. 129, Ex. 4. Ms. Bonham noted on the ultrasound report that an appointment had been made. ECF No. 129, Ex. 4. No referral appointment was scheduled and Ms. Simms did not see the doctors at the Perinatal Center before her next appointment with Dr. Booth in May. ECF No. 129, Ex. 3.

Ms. Simms received another ultrasound at Valley Health on May 14, 2008, at which time she was informed of the fetal abnormalities. ECF No. 129, Ex. 7, Ex. 8. Ms. Simms was sent for an additional ultrasound with Dr. Singh that same day; Dr. Singh confirmed the abnormalities. ECF No. 129, Ex. 8. Dr. Singh alleges that she also discussed the options of amniocentesis and termination of the pregnancy with Ms. Simms. ECF No. 129, Ex. 8. Ms. Simms alleges that she was never given the option to terminate her pregnancy. ECF No. 129, Ex. 9. Ms. Simms was then referred to a fetal care center in Cincinnati where she met with Dr. Hopkin. ECF No. 129, Ex. 11. Dr. Hopkin testified that the option of termination "probably would have been" discussed with Ms. Simms. ECF No. 140, Ex. 4. Ms. Simms did not terminate her pregnancy and Caelan was born on June 18, 2008 with significant disabilities.

## II. Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in

the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. "'[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.'" *Proctor v. Prince George's Hosp. Ctr.*, 32 F. Supp. 2d 820, 822 (D. Md. 1998) (quoting *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986)).

### III.     Motions in Limine

Plaintiffs' Motion *in Limine* No. 1 (ECF No. 119) and Plaintiffs' Motion *in Limine* No. 2 (ECF No. 120) have been taken under advisement. Plaintiffs' Motion *in Limine* No. 5 (ECF NO. 122) is **DENIED AS WITHDRAWN**. Plaintiffs' Motion *in Limine* No. 4 (ECF No. 121) and Plaintiffs' Motion *in Limine* No. 6 (ECF No. 123) are **DENIED WITHOUT PREJUDICE**. Dr. Booth is permitted to testify as a lay witness. If and when any expert testimony is elicited from him at trial, Plaintiffs may renew these two motions.

### IV. Government's Motion for Partial Summary Judgment

The Government seeks to dismiss Plaintiffs' claims for Misty Simms's lost earning capacity and for emotional damages. The Government argues that permitting recovery for both medical expenses and lost earning capacity may result in double recovery for the plaintiffs. Furthermore, the government contends that the holding in *James G. v. Caserta*, 322 S.E.2d 872 (W.Va. 1985), precludes the recovery of such damages. ECF No. 125. In *Caserta*, the court addressed whether parents can obtain damages in a wrongful birth action for the costs of caring for a child after the child has reached the age of majority. *Caserta*, 322 S.E.2d at 881. The court held that such damages are recoverable and explained that "in a wrongful birth action, parents may recover the extraordinary costs necessary to treat the birth defect and any additional medical or educational costs attributable to the birth defect." *Id.* at 882. The Governments reads this language as limiting the damages available in a wrongful birth action to only the medical and educational costs of raising a disabled child. Nothing in *Caserta*, however, explicitly limits damages to these extraordinary costs. Rather, the court explained that such extraordinary costs are available both when the disabled child is a minor, and after the age of majority where the child is incapable of supporting herself due to her disability. *Id.* at 882-83. Thus *Caserta* did not hold that parents may not recover for lost earning capacity and emotional damages; it did not squarely address the issue of these damages at all.

Among courts that have addressed this issue there is a split of authority. Several courts have held that, for policy reasons, parents cannot recover for emotional distress caused by the birth of a disabled child or for loss of services based on that emotional distress. *See, e.g.*, *Smith v. Cote*, 513 A.2d 341, 351 (N.H. 1986); *Becker v. Schwartz*, 386 N.E.2d 807, 809, 813-14 (N.Y. 1978). Other courts have reached the opposite conclusion, permitting damages beyond the extraordinary

-4-

medical and educational costs of raising a disabled child. *See, e.g.*, H*arbeson v. Parke-Davis, Inc.*, 656 P.2d 483, 494 (Wash. 1983) (en banc); *Naccash v. Burger*, 290 S.E.2d 825, 831 (Va. 1982). In *Naccash v. Burger*, for example, the Supreme Court of Virginia held that emotional damages are recoverable because there is "an unbroken chain of causal connection directly linking . . . the deprivation of the parents' opportunity" to terminate the pregnancy and the emotional distress they suffer upon the birth of their disabled child. *Naccash*, 290 S.E.2d at 831.

The Court finds the reasoning in *Naccash* to be persuasive. The injury underlying a wrongful birth claim is the deprivation of choice. As the court in *Caserta* explained:

> The underlying premise is that prudent medical care would have disclosed the possibility of birth defects either prior to conception or during pregnancy. As a proximate result of this diagnostic failure, the parents were precluded from making an informed decision to either prevent conception or to make a subsequent informed decision to terminate the pregnancy.

*Id.* at 881. This loss of choice results in the birth of a disabled child, which in turn creates extraordinary medical and educational costs for the parents. It may also necessitate that one or both parents stop working in order to care for the child. As a result, the parents may suffer a loss in earning capacity. Furthermore, the inability to make an informed choice can directly cause emotional and psychological suffering. All three categories of damages logically flow from the original injury. *See Naccash*, 290 S.E.2d at 831. There is no basis for distinguishing the medical and educational expenses from the lost earning capacity and emotional suffering that result from the same injury.

Here, Plaintiffs maintain that Caelan's severe disabilities require Misty Simms to be with her child daily. Plaintiffs state that she has ceased working in order to care for Caelan instead of continuing her plan to become a nurse. This, Plaintiffs allege, has led to a significant loss in her earning capacity. ECF No. 157. Plaintiffs also claim that Ms. Simms has suffered "serious

-5-

emotional distress." ECF No. 132. As explained above, parents who are precluded from making an informed choice regarding the birth of a disabled child may face a loss in earning capacity as well as emotional distress. Thus, if Defendants deprived Ms. Simms of that choice, any lost earning capacity or emotional damages she suffered as a result are recoverable. Accordingly, Plaintiffs' claim for Misty Simms's lost earning capacity will not dismissed, but will be evaluated with respect to the child's life care plan in order to prevent double recovery. Plaintiffs' claim for emotional damages will not be dismissed. For these reasons, the Government's Motion for Partial Summary Judgment (ECF No. 124) is **DENIED**.

## V. Plaintiffs' Motions for Partial Summary Judgment

Plaintiffs moved for partial summary judgment on the issue of liability, arguing that Defendant had a duty to the plaintiffs, breached that duty, and caused the plaintiffs some resultant harm. ECF No. 129. It is undisputed that Defendant had a duty to Misty Simms through Dr. Booth, her treating physician at Valley Health. It is further undisputed that when an ultrasound reveals potential fetal abnormalities, the standard of care requires the treating physician to refer the patient for fetal care and notify the patient of the referral. *See* ECF No. 129, Ex. 2. On February 25, 2008, Dr. Booth reviewed the results of an ultrasound performed on Ms. Simms and saw potential fetal abnormalities. *See* ECF No. 129, Ex. 1. He directed Ms. Bonham to refer the patient to a perinatal clinic. It is clear from the record that no such referral was completed and that Ms. Simms was not informed of the referral. Although the parties disagree over the precise steps that Dr. Booth and Ms. Bonham took, they agree that an appointment was not scheduled at the perinatal clinic and Ms. Simms was not notified of the referral following the February 25, 2008 ultrasound. *See* ECF No. 129, Ex. 3, Ex. 4, Ex. 5. Accordingly, the Court finds that Defendant

breached the standard of care by failing to refer Misty Simms to the perinatal clinic and failing to inform her of the referral.

Plaintiffs contend that this breach caused their damages because, as a direct result of Defendants' failure to refer Ms. Simms, she was not informed of the fetal abnormalities until it was too late for her to make an informed choice regarding whether to terminate her pregnancy. ECF No. 129. Plaintiffs claim that had Ms. Simms been properly referred and informed following the February 25, 2008 utrasound, she would have chosen to terminate the pregnancy. ECF No. 129. Defendant maintains, however, that Dr. Singh advised Ms. Simms in May, 2008 that she could still terminate the pregnancy if she wished to do so and that Dr. Hopkins "probably discussed termination of the pregnancy with Ms. Simms." ECF No. 140. Defendant's contentions are supported by the record. *See* ECF No. 129, Ex. If Ms. Simms was given the option to terminate her pregnancy before it was too late, then her injury was not caused by the defendant's breach but rather by her own choice not to terminate. The defendant has raised a genuine issue of material fact here, precluding summary judgment on the issue of causation. For these reasons, Plaintiffs' Motion for Partial Summary Judgment on Liability (ECF No. 129) is **GRANTED IN PART**.

Plaintiffs' Motion for Partial Summary Judgment on the Issue of Set Off of Damages (ECF No.127) has been taken under advisement.

## CONCLUSION

Plaintiffs' Motion *in Limine* No. 1 (ECF No. 119) and Plaintiffs' Motion *in Limine* No. 2 (ECF No. 120) have been taken under advisement. Plaintiffs' Motion *in Limine* No. 5 (ECF NO. 122) is **DENIED AS WITHDRAWN**. Plaintiffs' Motion *in Limine* No. 4 (ECF No. 121) and Plaintiffs' Motion *in Limine* No. 6 (ECF No. 123) are **DENIED WITHOUT PREJUDICE**. The Government's Motion for Partial Summary Judgment (ECF No. 124) is **DENIED**. Plaintiffs'

Motion for Partial Summary Judgment on the Issue of Set Off of Damages (ECF No.127) is taken under advisement. Plaintiffs' Motion for Partial Summary Judgment on Liability (ECF No. 129) is **GRANTED IN PART**.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: December 17, 2014

_____
ROBERT C. CHAMBERS, CHIEF JUDGE