# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

# HUNTINGTON DIVISION

MISTY SIMMS, next friend of
Caelan Jantuah, an infant, and
MISTY SIMMS, individually

                Plaintiffs,

v.                                 CIVIL ACTION NO. 3:11-0932

THE UNITED STATES OF AMERICA,

                Defendant.

## MEMORANDUM OPINION AND ORDER

On order of remand by the Fourth Circuit, the parties appeared before the Court for a collateral source hearing pursuant to West Virginia's Medical Professional Liability Act. *See* W. Va. Code § 55-7B-9a. Plaintiff Misty Simms brought this case under the Federal Tort Claims Act in her individual capacity and on behalf of her minor son, Caelan Jantuah. After holding a bench trial on Plaintiff's wrongful birth claim, the Court awarded damages to Plaintiff in her individual capacity and dismissed Caelan Jantuah as a party because West Virginia does not recognize a cause of action for the child. *See Simms v. United States* (*Simms I*), 107 F. Supp. 3d 561 (S.D.W. Va. 2015). Defendant appealed this Court's decision regarding the damages award, claiming that Defendant should have received an immediate offset, or, in the alternative, the Court should have directed the award into a reversionary trust. The Fourth Circuit heard argument on January 27, 2016 and issued an opinion on October 7, 2016 affirming in part and vacating in part. *See Simms v. United States* (*Simms II*), 839 F.3d 364 (4th Cir. 2016). The Fourth Circuit remanded the case back to this Court to conduct a collateral source hearing pursuant to West

1

Virginia Code § 55-7B-9a. The Court has conducted the required hearing and subsequently finds that Defendant does not meet the standard to justify an immediate offset for past or future medical expenses. The Court further rejects the request to order a reversionary trust.

## I.     Background

The Court has detailed the factual circumstances of this case extensively and will not undertake a full review here. *See Simms I*, 107 F. Supp. 3d at 564-68 (detailing relevant background information). Plaintiff brought suit against the United States under the Federal Tort Claims Act (FTCA) for negligent acts taken by Valley Health Systems, Inc. (Valley Health) during Plaintiff's neonatal care. Although Valley Health detected potential fetal abnormalities early in Plaintiff's pregnancy, the health care provider failed to inform Plaintiff of these abnormalities until Plaintiff's third trimester. As West Virginia's, and surrounding states', laws prohibit the termination of a pregnancy during the third trimester, this delay prevented Plaintiff from making a timely and informed decision on whether to obtain an abortion. Plaintiff's son, Caelan Jantuah (Caelan), survived birth, but he suffers from severe brain malformation and lives in a vegetative state.

Plaintiff sued Defendant for wrongful birth, which West Virginia recognizes to allow recovery for "extraordinary costs [incurred] for rearing a child with birth defects." *James G. v. Caserta*, 332, S.E.2d 872, 882 (W. Va. 1985). After a bench trial, this Court awarded Plaintiff damages for past medical expenses, future medical expenses, lost income, and noneconomic damages, in an amount of $12,222,743.00.[1] *See Order*, ECF No. 218, at 2. Defendant timely appealed, challenging the Court's decision that an offset was not warranted for the Defendant's

---

[1] The Fourth Circuit entered a partial judgment on February 22, 2016 for the undisputed portion of the damages award, amounting to $817,070.00. *See Partial J. Order*, ECF No. 252. The United States subsequently paid this amount to Plaintiff.

federal contributions to West Virginia's Medicaid program. Defendant also challenged the Court's decision to not require a reversionary trust to allocate Plaintiff's award.

After hearing oral arguments, the Fourth Circuit issued a published decision that affirmed in part, vacated in part, and remanded. *See Simms II*, 839 F.3d at 364. The court affirmed this Court's decision to award damages for past and future medical expenses even when West Virginia's Medicaid program issued the payments. *Id.* at 368-69. The court also affirmed this Court's use of medical billing statements to determine the appropriate damages award rather than using the amounts Medicaid actually paid for the medical services. *Id.* at 369-70. In remanding the case back to this Court, the Fourth Circuit determined that the Medical Professional Liability Act (MPLA or § 55-7B-9a) requires a district court to conduct a collateral source hearing. The remand specifically tasked this Court to determine whether West Virginia's Medicaid program had a subrogation lien against Plaintiff as a "recipient" or through another right of recovery to prevent an immediate offset to the final judgment award for past and future medical expenses. *Id.* at 371-72. The court also noted that issues of double recovery and a reversionary trust could be reconsidered. *Id.* at 373 n.5.

Accordingly, the Court issued a briefing schedule for the parties to explain why collateral source payments from West Virginia's Medicaid program should, or should not, be factored into the final damages award as an offset. As directed by the Fourth Circuit, the Court held a collateral source hearing on July 11, 2017 pursuant to § 55-7B-9a.

**II.    The MPLA**

West Virginia recognizes the common law collateral source rule in which a tortfeasor cannot receive an offset or credit against the injured party for payments received by other sources. *See Kenney v. Liston*, 760 S.E.2d 434, 440 (W. Va. 2014). However, the MPLA modifies the

collateral source rule for cases involving medical professional liability, permitting an offset in damages. *See Manor Care, Inc. v. Douglas*, 763 S.E.2d 73, 87 (W. Va. 2014). The MPLA defines collateral sources as "[a]ny federal or state act, public program or insurance which provides payments for medical expenses." W. Va. Code § 55-7B-2b. The parties do not dispute that Medicaid, as a state public medical assistance program, qualifies as a collateral source.

The MPLA separates past medical payments from future medical payments when determining whether a defendant obtains an offset for collateral source payments. For past payments, the "defendant who has been found liable to the plaintiff for damages for medical care … may present to the court, after the trier of fact has rendered a verdict, but before the entry of judgment, evidence of payments the plaintiff has received for the same injury from collateral sources." W. Va. Code § 55-7B-9a(a). Before presenting evidence on calculated future medical payments, however, the defendant must convince the court of three preconditions: (1) that the collateral source has "a preexisting contractual or statutory obligation" to pay the benefits; (2) that "[t]he benefits, to a reasonable degree of certainty, will be paid to the plaintiff for" future expenses as determined by the court; and (3) that the future medical payments are "readily reducible to a sum certain." W. Va. Code § 55-7B-9a(b).

After the parties present the evidence for past and future medical payments in a collateral source hearing, the court must determine the following factual findings: (1) the total damage award; (2) the total damage award in relation to "each category of economic loss"; (3) the total amount of collateral source payments, both past and future, that should be considered; and (4) the total amount of a plaintiff's contributions and premiums paid to receive the benefits. W. Va. Code § 55-7B-9a(d). From this information, the court calculates the final damage award to be issued in a judgment order.

4

The final section of the MPLA contains a list of exceptions that prevent a court from issuing an offset award for collateral source payments. W. Va. Code § 55-7B-9a(g). A court cannot reduce the amount awarded in a verdict to reflect: (1) "[a]mounts paid to or on behalf of the plaintiff which the collateral source has a right to recover from the plaintiff through subrogation, lien or reimbursement"; (2) "[a]mounts in excess of benefits actually paid or to be paid" to the plaintiff by the collateral source; (3) proceeds from individual disability payments or income replacement insurance when paid entirely by the plaintiff; (4) a plaintiff's assets; or (5) settlement awards from other tortfeasors. *Id.* With these directives in mind, the Court turns to Plaintiff's damages award.

### III. Discussion

The West Virginia legislature designed the MPLA to alter the traditional collateral source rule in medical liability cases. *See Kenney*, 760 S.E.2d at 446 n.54 ("We note that, in the limited context of medical negligence actions, the Legislature has chosen to alter this balance and to permit a careless defendant to benefit from evidence of payments the plaintiff has received for the same injury from collateral sources." (citation omitted)). Pursuant to § 55-7B-9a and the Fourth Circuit's mandate, the Court held a collateral source hearing so the parties could present evidence of past and future payments made primarily by West Virginia's Medicaid program. Based on the information presented at the hearing and this Court's interpretation of "recipient" and "third party" under West Virginia Code § 9-5-11, the Court finds that the state Medicaid program has a subrogation lien over Plaintiff's damage award, and, thus, Defendant cannot obtain an immediate offset for past or future medical expenses.

#### a. Past Medical Expenses

In the collateral source hearing, Defendant presented evidence of payments made by the state Medicaid program that Defendant thought justified an offset from the final award. The Court first turns to the MPLA exception to determine whether such an offset is permitted. W. Va. Code § 55-7B-9a(g). Specifically, the first listed exception prevents a court from calculating an offset when the collateral source, in this case Medicaid, has a right to recover from Plaintiff directly. *See* W. Va. Code § 55-7B-9a(g)(1). As directed by the Fourth Circuit, the Court must explain why it previously concluded that the state Medicaid program held a subrogation lien over Plaintiff. *See Mem. Op. & Order*, ECF No. 183, at 4 ("Finally, the state Medicaid program has the lien against any award to Plaintiffs here."). The Court clarifies that Plaintiff classifies as a "recipient" under § 9-5-11, which provides the state Medicaid program a lien over the final judgment award.

When a Medicaid recipient recovers damages from a third party through a court judgment, the state Medicaid program holds a priority right to be paid first from the damages awarded under an assignment of rights. *See* W. Va. Code § 9-5-11(b)(6) ("The department shall have a priority right to be paid first out of any payments made to the recipient for past medical expenses before the recipient can recover any of his or her own costs for medical care."). As the Medicaid program becomes legally subrogated to the rights of the recipient, Plaintiff must classify as a recipient for the assignment to apply.[2] *See* W. Va. Code § 9-5-11(b)(5) ("The department shall be legally subrogated to the rights of the recipient against the third party."). Under the statute, a recipient means one "who applies for and receives medical assistance under the Medicaid Program."

---

[2] Plaintiff makes a secondary argument to the Court that if Plaintiff conceded that she does not classify as a recipient of the Medicaid funds, then she also could not be considered the recipient of any collateral source payments, which would ultimately prevent the offset from applying. *See Pl.'s Resp.*, ECF No. 276, at 5 n.2. If Plaintiff did not "receive" the Medicaid payments, then Medicaid is not a collateral source under § 55-7b-9a(a). As the Court finds that Plaintiff falls into the "recipient" context in this circumstance, the Court will not delve into a lengthy discussion on this alternative theory.

W. Va. Code § 9-5-11(a)(3). The definition section specifies that the meanings of the terms should be used "unless context otherwise requires." W. Va. Code § 9-5-11(a).

Defendant argues that only Caelan classifies as a recipient because he receives the direct financial assistance for his medical care. *Def.'s Mem.*, ECF No. 274, at 8-10. Defendant points to the lien letters from the West Virginia Medicaid program that list Caelan as the recipient and do not mention Plaintiff by name. *See Exh. A*, ECF No. 274-1; *Exh. B.*, ECF No. 274-2. The Court agrees that Caelan fits the definition of recipient under a strict construction of the term. However, the statute allows for definition flexibility if the context so requires. The Court is not convinced by Defendant's arguments that the Medicaid program could not hold a lien against Plaintiff's award as a recipient in this case.

The circumstances of this case adequately provide context that requires a flexible definition to allow Plaintiff to fall under the recipient term. These collateral source hearings usually arise under the context of two situations: the first when the plaintiff is a direct recipient of Medicaid payments, and the application of collateral source offsets is clear; and the second when an injured party is the direct recipient of Medicaid payments, but the plaintiff is a personal legal representative of that injured party. This case is like the latter scenario in which Plaintiff is the injured party's parent acting as Caelan's personal and legal representative. The statutory language in § 9-5-11(b)[3] explains that an assignment of rights applies to the applicant or his or her legal representative. The Court finds that this language provides context for the Court to read Plaintiff as a recipient in this case. A parent sufficiently stands in place of the child as the legal responsible

---

[3] Section 9-5-11(b)(1) states that the "Submission of an application to the department for medical assistance is, as a matter of law, an assignment of the right of the applicant *or his or her legal representative* to recover from third parties past medical expenses paid for by the Medicaid program." W. Va. Code § 9-5-11(b)(1) (emphasis added).

7

party if the child is not of age, making the parent a recipient under the definition section of the statute. Here, although Caelan is the individual who requires the Medicaid assistance, Plaintiff is Caelan's parent and is responsible—and legally obligated—to care for Caelan's needs. *See Simms II*, 839 F.3d at 368 (recognizing parent's legal duty to provide for child as directed in *Caserta*, 332 S.E.2d at 882-83). The Court finds as a matter of law that Plaintiff has a duty to provide for her minor child as that child's parent, and Plaintiff, therefore, has a duty to make payments for Caelan's medical care. *See Wyatt v. Wyatt*, 408 S.E.2d 51, 54 (W. Va. 1991) ("The duty of a parent to support a child is a basic duty owed by the parent to the child"). Plaintiff applied for Caelan's Medicaid, continues to provide for Caelan's medical expenses, and has a legal obligation to care for her child. The Court is satisfied with this relationship between parent and minor child to qualify Plaintiff as a recipient under these specific circumstances.[4] Caelan may be the direct recipient of the Medicaid benefits, but the hospital and medical bills would have fallen on Plaintiff as the legal guardian and caretaker of Caelan if they went unpaid. *See id.* The Medicaid benefits, thus, directly assist Plaintiff in paying for her son's care. Because the statute allows for definitional flexibility based on context, the Court has little trouble in characterizing a parent of a minor child as the recipient of Medicaid benefits in this case.

Defining Plaintiff as within the context of a "recipient" in this case does not expand the design of the statute for assignment of rights. The instant action represents a unique situation in which the parent of a minor child can recover damages for the extraordinary costs spent on that child's medical care under a wrongful birth claim. The child, on the other hand, has no right to

---

[4] Plaintiff also makes an argument that she could classify as a "third party" under the definition statute because she has a legal obligation to support her minor child. *Pl.'s Resp.*, ECF No. 276, at 8. The Court defers discussion of "third party" classification until the section discussing future payments because Plaintiff adequately meets the definition of recipient here.

8

recovery. As indicated by the lack of precedent, the Court does not expect this situation to recur frequently. Under the circumstances of this case with this specific cause of action, the Court considers it appropriate to characterize Plaintiff as the recipient of Medicaid benefits. Payments made to Plaintiff for Caelan's medical care, thus, permit the state Medicaid program to hold a subrogation lien over the damages award.

Accordingly, the Court finds that the state Medicaid program shall be legally subrogated to the rights of Plaintiff, and, thus, the Medicaid program has a priority right to receive payments for past medical expenses. The statutory language in the MPLA prevents the Court from issuing an offset for past medical expenses because the state Medicaid program, as the collateral source, has a right to recover directly from Plaintiff. Plaintiff further acknowledged this right to recovery at the collateral source hearing and agreed to pay Medicaid from the damages award when requested.

Moreover, even if Medicaid did not have subrogation lien over Plaintiff as a recipient, the Court finds that the state Medicaid program would still have the right to recover past expenses, preventing the court from issuing an offset. Under § 55-7B-9a, the legislature has directed that a court cannot reduce a verdict when "the collateral source has a right to recover from the plaintiff through subrogation, lien or *reimbursement*." W. Va. Code § 55-7B-9a(g)(1) (emphasis added). Even if the state Medicaid program does not have a subrogation lien over Plaintiff through the Court's characterization of Plaintiff as a "recipient", the program has a right to reimbursement by other means. Specifically, Plaintiff agreed "to assign to the DHHR [West Virginia Department of Health and Human Resources] benefits available to any Medicaid recipient from any third-party source as a result of injury, accident, or illness." *2014 Medicaid Appl.*, ECF No. 276-6, at 9; *see also 2017 Medicaid Appl.*, ECF No. 287-1, at 10 (updated application presented at hearing reflects

9

same language). The application continues, stating, "If the liable third-party makes payment directly to me, I agree to refund to DHHR an amount up to, but not exceeding, the amount of Medicaid liability." *Id.* The application is signed by Plaintiff and holds Plaintiff liable to the state Medicaid program for reimbursement of past medical expenses. *2014 Medicaid Appl.*, ECF No. 276-6, at 11; *2017 Medicaid Appl.*, ECF No. 287-1, at 12.

Defendant challenges this contract, citing that the same problem of "recipient" arises in this context. *Def.'s Reply*, ECF No. 278, at 8. The damages award benefits Plaintiff individually, but the contract specifies that the benefits available to the "recipient" shall be assigned to the state Medicaid program. Therefore, Defendant argues, Plaintiff is not legally required to pay the state Medicaid program because the damages award goes to her, not the recipient. *Id.* The Court disagrees. The application specifies that if the signatory to the application (Plaintiff) is paid directly, she must refund the state Medicaid program for its liability. *2014 Medicaid Appl.*, ECF No. 276-6, at 9; *2017 Medicaid Appl.*, ECF No. 287-1, at 10. Even if the Court considers Caelan as the applicant for his Medicaid coverage, the statutory language in § 9-5-11(b)(1) further provides the assignment of rights of the applicant's legal representative. *See* W. Va. Code § 9-5-11(b)(1). This language, in conjunction with Plaintiff's legal obligation to pay for her son's medical care as a parent, satisfies the Court that the application binds Plaintiff to repay medical costs borne by Medicaid for her son.

The Court finds no reason to treat this assignment of rights any differently than a traditional contractual agreement. The 2017 application shows that the language assigning third party payments appears in each application signed by Plaintiff. Accordingly, the Court finds that even without Plaintiff's classification as a "recipient", the state Medicaid program still has a right to recover past medical benefits through the Medicaid application signed by Plaintiff. Therefore,

the Court cannot issue an immediate offset for past medical expenses pursuant to the MPLA's limitation in § 55-7B-9a(g).

### b. Future Medical Expenses

Regarding future medical expenses, the Court first turns to the specific statutory requirements set forth in § 55-7B-9a(b). In order to present evidence on future payments from collateral sources, the Court must find that Defendant has met the statutory preconditions. *See* W. Va. Code § 55-7B-9a(b). Defendant must show that: (1) the collateral source has "a preexisting contractual or statutory obligation" to pay; (2) benefits will continue to be paid to Plaintiff in the future, determined "to a reasonable degree of certainty"; and (3) the future medical expenses can be reduced to a sum certain. *Id.* The Court looks to each of these statutory preconditions in turn.

First, the Court finds that Defendant can satisfy the first precondition that the collateral source has a preexisting or statutory obligation to continue to pay Plaintiff. Currently, Caelan receives payments for medical expenses through West Virginia's Medicaid program and the Medicaid Waiver program. Presumably such coverage will continue. Under the current state of the law, the Court will assume that West Virginia's Medicaid program will continue to have a statutory obligation to pay medical expenses for qualifying citizens of the state. Accordingly, Defendant meets this statutory precondition.

Second, the Court considers whether these benefits will continue to be paid to a reasonable degree of certainty in the future. This is the most troublesome precondition that Defendant has the burden to prove. Defendant wishes to believe that the Medicaid and Medicaid Waiver program will continue as structured in the current administration, but the Court is hesitant to agree. Although Defendant accurately reflects that the past federal administration expanded Medicaid to

provide greater coverage and benefits to individuals, there is real concern that the extent of Medicaid coverage will shrink in the future, which will, in turn, cut benefits to the qualified citizens of the state.[5] These concerns may not come to fruition, but the current political climate at least suggests that these benefits cannot be guaranteed to a reasonable degree of certainty in the future. Defendant also cites the Fourth Circuit's decision in *United States v. Brooks* as support for finding a reasonable degree of certainty even when future disability payments could involve some uncertainty. 176 F.2d 482, 484 (4th Cir. 1949). This decision, however, allows a court to use "its best judgment after all the facts and circumstances of the case have been taken in consideration." *Id.* The facts and circumstances of this case, combined with the hostile political climate surrounding the future of Medicaid (at least as to the ACA expansion), weighs in favor of finding uncertainty with the future of guaranteed benefits. The Court, therefore, doubts Defendant's assertions supporting this statutory condition.

---

[5] The House of Representatives recently passed the American Health Care Act (AHCA). *See* American Health Care Act of 2017, H.R. 1628, 115th Cong. This new bill repeals some of the Affordable Care Act's (ACA) provisions, including rolling back Medicaid expansions in the states that adopted it. *See* Thomas Kaplan & Robert Pear, *With $8 Billion Deal on Health Bill, House G.O.P. Leader Says 'We Have Enough Votes'*, N.Y. Times, May 3, 2017, https://www.nytimes.com/2017/05/03/us/politics/gop-eyes-8-billion-addition-to-win-a-crucial-vote-to-the-latest-health-bill.html?_r=0 (explaining that the AHCA will roll back the Medicaid expansion). If passed into law, this could affect the way West Virginia's Medicaid programs are handled. *See* Louise Norris, *West Virginia and the ACA's Medicaid expansion*, healthinsurance.org, Feb. 14, 2017, https://www.healthinsurance.org/west-virginia-medicaid/ (explaining that West Virginia expanded its Medicaid program under the ACA); *see also Congressional Budget Office Cost Estimate H.R. 1628*, May 24, 2017, at 40 (detailing number of people losing health coverage under Medicaid with AHCA), available at https://apps.npr.org/documents/document.html?id=3731724-CBO-Report-On-AHCA-As-Passed-By-The-House. After the AHCA passed the House, the Senate began drafting a new healthcare bill, the latest of which also cuts federal Medicaid spending. *See* Thomas Kaplan & Robert Pear, *Projected Drop in Medicaid Spending Heightens Hurdle for G.O.P. Health Bill*, N.Y. Times, June 29, 2017, https://www.nytimes.com/2017/06/29/us/politics/health-care-bill-senate-republicans.html. The current impasse in Congress on pushing these bills forward does not alleviate the concern that Medicaid is targeted for significant change.

Third, the Court finds that Defendant satisfies the last precondition in that the future benefits, if continued, can be readily reduced to a sum certain. After analyzing expert testimony, the Court previously issued a judgment that calculated the future medical expenses expected to care for Caelan to a specific sum. *Simms I*, 107 F. Supp. 3d at 573-78. The Court considered the estimated life expectancy based on assessments of Caelan's physicians and nonmedical expert witnesses provided by both parties. *Id.* at 573-76. The Court determined that Caelan's projected life expectancy would be twenty-one years of age. *Id.* at 576. The Court also considered expert testimony from the life care planner, Shelene Giles, who testified at trial and at the collateral source hearing. *Id.* at 577. Giles calculated the 2015 reimbursement rates and projected costs out to a 21-year life expectancy for Caelan at the hearing. Dr. Michael Brookshire, an economist, took the information provided by Giles to reduce the overall costs to the present value for the costs at trial and the collateral source payments at the hearing.[6] The Court used this determination with Caelan's life expectancy to calculate the present value of the life care plan to a total of $8,683,196.00 at trial. *Id.* During trial and the subsequent collateral source hearing, the Court has carefully analyzed the applicable data to estimate Caelan's future medical expenses. The Court is satisfied with the expert testimony and estimations offered that the future medical expenses can be reduced to a sum certain. Therefore, Defendant meets this statutory precondition.

The Court, thus, finds that Defendant meets two of the three statutory preconditions. The Court hesitates to find that Defendant satisfactorily demonstrated that Medicaid benefits will be paid to Plaintiff and her son in the future to a reasonable degree of certainty, and Defendant has

---

[6] Plaintiff objected at the hearing to Dr. Brookshire's calculations for using the inflation rates for specific medical care categories rather than the relatively constant reimbursement rates. The Court assumes without deciding that Dr. Brookshire's calculations accurately reflect the present value as the Court's final decision is not affected by the calculations.

13

not been able to supplement its assertions with actual data or future projections. However, even if Defendant could meet all three of the statutory preconditions, the Court finds that an offset is still unwarranted in this case. The MPLA exception for collateral source offsets dictates that a court cannot reduce the damages award if the collateral source has a right to recover from the plaintiff. Accordingly, even if Defendant could demonstrate that all three of the statutory preconditions are met to justify presenting evidence on future medical payments, the Court cannot provide an offset on the damages award.

As previously analyzed, the Court finds that the state Medicaid program has a subrogation lien over Plaintiff's damage award for past medical expenses because Plaintiff is a "recipient" in these circumstances. *See* W. Va. Code § 9-5-11(b)(5). Similarly, the state Medicaid program has a right to recover future expenses from Plaintiff's damage award. *See* W. Va. Code § 55-7B-9a(g)(1). Even if Plaintiff cannot be classified as a "recipient" under the statute, Plaintiff has contractually agreed that the state Medicaid program has a right to recover benefits made available through a third party for future medical expenses. The Court also finds that Plaintiff can fall into the definition of "third party" for future expenses. A third party is defined as "an individual or entity that is alleged to be liable to pay all or part of the costs of a recipient's medical treatment and medical-related services." W. Va. Code 9-5-11(a)(5). As already explained by this Court, Plaintiff is liable to pay for Caelan's medical treatments under Plaintiff's legal obligation as Caelan's parent. The Court, thus, agrees with Plaintiff that Plaintiff satisfies the definitional requirement under "third party" due to Plaintiff's position as Caelan's parent. The evidence further shows that the state Medicaid program has not waived its right to collect from a third party for Caelan's medical expenses, and the State can do so as expenses accrue. *See Email Exchange*, ECF No. 287-13.

Therefore, as with past payments, the Court cannot reduce the final verdict to offset future expenses because the collateral source—the state Medicaid program—has a right to recover from Plaintiff directly.[7] Accordingly, it would be inappropriate for the Court to conduct an immediate offset when the state program can demand repayments for medical expenses from Plaintiff as needed in the future. The Court finds it unnecessary to separate the costs accrued since the verdict from the future damages award as the state Medicaid program can enforce its right to recover both of these costs from Plaintiff at its discretion.

### c. Double Recovery

Defendant further argues that the Court should reduce Plaintiff's award because Defendant cannot be forced to pay double the damages for the same expense. *See. Def.'s Mem.*, ECF No. 274, at 12-17. This entire argument is premised on the notion that the federal government pays into the state's Medicaid program, which in turn pays out medical expenses for the child recipient, Caelan. Defendant also asserts that Plaintiff cannot be classified as a recipient, preventing the state Medicaid program from holding a subrogation lien over the final judgment award. *See id.* at 16. The Court, however, has already addressed this argument and finds that, under these circumstances, context requires that Plaintiff be defined as the recipient of the Medicaid funds received for her minor son.

---

[7] Moreover, the Court agrees with Plaintiff's analysis that an immediate offset for future medical expenses would require Plaintiff to continue to rely on Medicaid services. *See Pl.'s Resp.*, ECF No. 276, at 17. Currently, Medicaid best serves Plaintiff's financial and Caelan's medical needs, but the future remains highly speculative. By issuing an immediate offset for future expenses, the Court would pigeonhole Plaintiff and her son into the Medicaid system and potentially prevent Plaintiff from pursuing other medical services for her son. The Court compares this to the decision of the Third Circuit in *Feeley v. United States* and finds the situations similar. 337 F.2d 924, 935 (3d Cir. 1964) (finding it an "unconscionable burden" to force plaintiff to seek the same public assistance in the future).

Moreover, the Court is not convinced by Defendant's argument that it is being forced to pay twice for Plaintiff's harms, which would result in an impermissible double recovery. *See id.* at 12. As the Court has previously stated in past decisions, the Medicaid payments are paid from the West Virginia Medicaid program. *Simms I*, 107 F. Supp. 3d at 573 ("The State is responsible for administering the state Medicaid program, paying health care providers, and setting rates for reimbursement."); *see also Mem. Op. & Order*, ECF No. 183, at 4 ("Federal contributions to the state Medicaid program do not turn state payments into federal payments."). Although federal money funnels into the state programs, the state program issues the medical payments to citizens of that state. *See* 42 U.S.C. § 1396b(a) (directing the Secretary to "pay to each *State* which has a plan approved") (emphasis added); W. Va. Code 9-3-3 ("When the [state] department approves an application for any class of welfare assistance, it shall fix the amount, form, extent and period of such assistance in accordance with applicable federal and state laws, rules and regulations and within the limits of available funds."). The initial provision of federal money, therefore, combines with state contributions and transforms into the state insurance program. The state is the entity that awards benefits to the individuals within the state based off received applications. This transformation in funds distinguishes this case from the ones cited by Defendant that challenge double recovery when the same defendant is forced to pay multiple payments to the same plaintiff. *See, e.g.*, *Brooks v. United States*, 337 U.S. 49, 54 (1949) (questioning whether reduction should be applied to serviceman's FTCA award because federal government already paid hospital expenses through serviceman's benefits); *Mays v. United States*, 806 F.2d 976, 978 (10th Cir. 1986) (requiring reduction of FTCA award when federal government also paid benefits to plaintiff from general revenues of United States). West Virginia's state government is a different entity than the federal government, so these cases are inapposite. Enforcing judgment in this case

against the federal government does not result in double payments by the same entity because the West Virginia Medicaid program—not the federal government—made the initial medical payments to Plaintiff and her son. The Court, thus, remains steadfast in finding that Defendant is not being forced to make double payments.

In its opinion, the Fourth Circuit did not address whether the federal financial contribution to the state Medicaid program justified a reduction in the damages award. *Simms II*, 839 F.3d at 373 n.5. The Court is not moved to change its earlier position that such a reduction is not warranted. The previously determined damage award does not violate double recovery principles under federal or state law as the state and federal governments remain separate entities. Accordingly, the Court refuses to grant a reduction for the federal contributions paid into the West Virginia Medicaid program.

### d. Costs Accumulated Between Verdict and Hearing

The Court tasked the parties to come to an agreement as to how the costs arising between the verdict and this hearing should be classified. *See Order*, ECF No. 265, at 2. The parties continue to disagree and briefed the opposing viewpoints to the Court. *See Def.'s Mem.*, ECF No. 274, at 11; *Pl.'s Resp.*, ECF No. 276, at 2. Defendant argues that the costs before the hearing should be deducted from the future medical expenses because the costs are certain. *Def.'s Mem.*, ECF No. 274, at 11. Plaintiff argues that deducting a sum certain from a future benefits award would be akin to accepting new evidence after trial to alter a verdict. *Pl.'s Resp.*, ECF No. 276, at 2. As the Court decided that an offset was inappropriate, the differentiation between past and future costs becomes largely unnecessary. The state Medicaid program has a lien against Plaintiff's award and can directly recover the interim costs from the overall damage award. Therefore, the Court will not parse out the actual costs that have accrued between trial and this

hearing, allowing Medicaid to enforce its right to recovery for Caelan's expenses as the costs become finalized.

### e. Reversionary Trust

Finally, the Court will consider Defendant's renewed arguments for directing the damage award into a reversionary trust. The Court has authority to create a reversionary trust in FTCA actions to ensure the legislature's intent is recognized in a damages award. *See Cibula v. United States*, 664 F.3d 428, 433 (4th Cir. 2012); *Dutra v. United States*, 478 F.3d 1090, 1092 (9th Cir. 2007) ("The FTCA authorizes courts to craft remedies that approximate the results contemplated by state statutes, and nothing in the FTCA prevents district courts from ordering the United States to provide periodic payments in the form of a reversionary trust."). Defendant requests the Court to enforce a reversionary trust, stating that it reflects West Virginia's state legislature's intent with the MPLA. *Def.'s Mem.*, ECF No. 274, at 18. However, the Court has thoroughly discussed that the MPLA does not require an immediate offset in this case because the state Medicaid program has a priority right to recover from Plaintiff's award. Defendant also argues that a reversionary trust is necessary if an immediate offset is not granted to avoid issues regarding double recovery. *See Def.'s Mem.*, ECF No. 274, at 18. The Court likewise addressed this issue, finding that Plaintiff's damage award does not force Defendant to pay for the same injury twice. Without the concerns for double recovery and priority rights to payment, the Court finds it unnecessary to require a reversionary trust. Additionally, the state Medicaid program is the entity with a right to recover, so the State can determine how it chooses to seek repayments from Plaintiff. If the State seeks a reversionary trust, that issue can be addressed at that time, but the State is not directly involved in this litigation. The federal government does not have the same enforcement interest

as the State in this case, and the Court will not require a reversionary trust.[8] Although, as Defendant notes, the Fourth Circuit allowed the Court to reconsider the reversionary trust issue on remand, the Court does not consider the forced creation of a reversionary trust "an appropriate exercise of its discretion." *Simms II*, 839 F.3d at 373 n.5.

## IV. Conclusion

Accordingly, the Court has considered arguments by Defendant for an immediate offset for past and future medical expenses pursuant to § 55-7B-9a. Characterizing Plaintiff as a "recipient", the Court finds that the West Virginia Medicaid program has a lien against Plaintiff's damage award for past costs borne by the program. Therefore, the Court cannot issue an immediate offset because the Medicaid agency has a right to recover from Plaintiff directly. Even if Plaintiff cannot meet the definition of "recipient", however, the Court finds that the Medicaid agency still has a right to recover past and future costs through the contractual obligation of Plaintiff's Medicaid application for her minor son. The state Medicaid program can also seek reimbursement for future costs from Plaintiff as a "third party." Further, the Court finds that issuing judgment against Defendant does not present issues with double recovery as Defendant is the *federal* government and the Medicaid program providing benefits is run by the State of West Virginia. Finally, the Court chooses to use its discretion to not require a reversionary trust in this case. The final judgment in this case, therefore, stands. *See Am. J. Order*, ECF No. 219.

---

[8] Plaintiff also discussed the intended use of a special needs trust at the hearing, which could alleviate many of Defendant's concerns.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: August 3, 2017

_____
ROBERT C. CHAMBERS, CHIEF JUDGE